UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 16-2792(DSD/BRT)

Northern States Power Company,

        Plaintiff,

v.                                         **ORDER**

TriVis, Inc.,

        Defendant.

      James J. Hartnett, Esq., Kyle R. Hardwick, Esq. and Faegre Baker Daniels LLP, 90 South 7th Street, Suite 2200, Minneapolis, MN 55402, counsel for plaintiff.

      C. Todd Koebele, Esq., John Paul J. Gatto, Esq., Ryan Malone, Esq. and HKM Law Group, 30 East 7th Street, Suite 3200, St. Paul, MN 55101, counsel for defendant.

      This matter is before the court upon the motion to vacate default judgment by defendant TriVis, Inc. Based on a review of the file, record, and proceedings herein, and for the following reasons, the court grants the motion.

**BACKGROUND**

      This dispute arises from services performed by TriVis for plaintiff Xcel Energy. In 1999, David Bland incorporated TriVis under the laws of Alabama for the purpose of providing nuclear waste services. Bland Decl. ¶¶ 1-2. Bland served as the company's president and registered agent for service in Alabama. Id. ¶ 3. In 2008, TriVis filed a certificate of authority to transact business in Minnesota with the Minnesota Secretary of State,

appointing Patrick Smith, a former TriVis employee, as the registered agent for service. Id. ¶¶ 4-5. On August 7, 2012, the Minnesota Secretary of State revoked the certificate, most likely for failing to pay the annual fee. Id. ¶ 6; Gatto Aff. Ex D, ECF No. 18-2.

On March 18, 2013, Xcel contracted with TriVis to dispose of spent nuclear fuel rods at the Monticello, Minnesota nuclear plant. Gatto Aff. Ex. B ¶¶ 4-5, ECF No. 18. TriVis allegedly failed to follow proper procedures in disposing of the nuclear rods, which led Xcel to terminate the contract and triggered a regulatory investigation. See id. Ex. I ¶¶ 16-17; Hartnett Decl. Ex. 3, ECF No. 24. In June 2014, Bland informed Xcel that TriVis would be going out of business due to the Monticello event. Hartnett Decl. Ex. 7. On October 8, 2014, TriVis filed articles of dissolution with the Alabama Secretary of State. See id Ex. 10.

In September 2015, Xcel brought claims against TriVis for breach of contract and negligent misrepresentation in Hennepin County. See Gatto Aff. Ex. B. On September 18, Xcel attempted to serve TriVis at its registered address in Alabama, but failed because TriVis had shut down operations. Hartnett Decl. Ex. 11. In an another attempt to effect service, on September 23, Xcel served the summons and complaint on the Minnesota Secretary of State pursuant to Minn. Stat. § 5.25, subd. 4(b). See Gatto Aff. Exs. C, E. Xcel requested that the secretary mail the summons and

complaint to TriVis' Alabama address, but the secretary sent the documents to TriVis' registered office address in Clear Lake, Minnesota, which was also returned as undeliverable.[1]  See id. Ex. F.  Subsequently, on September 24, Xcel mailed the civil cover sheet for the summons and complaint by certified mail to TriVis' Alabama address, which was, again, returned as undeliverable.  See Hartnett Decl. Ex. 12.

Xcel moved for a default judgment against TriVis, which the state court granted on December 3, 2015, for the amount of $10,020,355, plus pre- and post-judgment interest and reimbursement of Xcel's costs and disbursements.  See Gatto Aff. Ex. A.  Shortly thereafter, Xcel instituted garnishment proceedings against several insurers of TriVis, which was timely removed to this court.  See N. States Power Co. v. TriVis, Inc., No. 16-51, 2016 WL 2621953, at *2 (D. Minn. May 6, 2016).  Garnishee Underwriters at Lloyds, London contacted Bland concerning the suit on February 5, 2016.  Bland Decl. ¶ 14.  Bland testified that this is the fist time he learned of Xcel's suit.  Id.  Separate from the garnishment action, TriVis removed the complaint and default judgment on August 19.  On October 21, TriVis filed the instant motion to vacate the default judgment.

---

[1]  At some point prior to 2012, Smith, the registered agent, left Minnesota, and no TriVis employee remained at the Clear Lake address.  Bland Decl. ¶ 7.

## DISCUSSION

TriVis argues that the court should vacate the default judgment because the state court's judgment is void under Fed. R. Civ. P. 60(b)(4).  The judgment of a court is void if the defendant was not properly served.  See Printed Media Servs. Inc. v. Solna Web, Inc., 11 F.3d 838, 843 (8th Cir. 1993) ("If a defendant is improperly served, a federal court lacks jurisdiction over the defendant.").  The court looks to state law in determining whether service was sufficient.  See Barner v. Thompson/Ctr. Arms Co., 796 F.3d 897, 900 ("In a case that has been removed from state court, the sufficiency of service prior to removal is determined by state law ....").

Where a state court's judgment is void for lack of service, a federal court has the authority to vacate the judgment.  See Johnson v. Arden, 614 F.3d 785, 799 (8th Cir. 2010) (affirming district court's order vacating a state court judgment for lack of personal jurisdiction); see also Jenkinds v. MTGLQ Inv'rs, 218 F. App'x 719, 724 (10th Cir. 2007) ("The district court then could set aside the [state court's] default judgment under Fed. R. Civ. P. 55(c) and 60(b).").  The court has no discretion in granting relief from a void judgment.  Johnson, 614 F.3d at 799.

TriVis argues that Xcel's service of process under Minn. Stat. § 5.25 was insufficient, and the court agrees.  Minnesota law provides that service of process may be effected on a foreign

4

corporation "whenever the certificate of authority of a foreign corporation is revoked or canceled" by delivering to the Minnesota Secretary of State the documents to be served.  Minn. Stat. § 5.25 subdiv 4(b).  When service is effected by the secretary of state, the secretary must forward the copy of service of process addressed to the business entity: (1) at the registered office in Minnesota; (2) at the address designated in the application for withdrawal, if the business entity has withdrawn from Minnesota; (3) at the address provided by the submitting party, if the business' authority to do business in Minnesota has been revoked; or (4) at the address provided by the submitting party, if the business was never authorized to do business in Minnesota.  Minn. Stat. § 5.25 subdiv. 6.  Where a business entity has had its authority to transact business in Minnesota revoked, "service must be made" according to the third or fourth options listed above.  Minn. Stat. § 5.25 subdiv. 5(c).

Here, TriVis' authority to do transact business in the state had been revoked; therefore, the statute required the secretary of state to send service of process to the address provided by Xcel. But the secretary sent the service of process to TriVis' Minnesota address, not the Alabama address provided by Xcel.  As a result, TriVis was not properly served under the Minnesota statute.

Xcel argues that the plain reading of the statute conflicts with Minn. Stat. §§ 303.16 and 303.17.  Xcel notes that, in

contrast to § 303.16, which requires a withdrawing corporation to revoke the authority of its registered agent in Minnesota to receive service of process, § 303.17 contains no language indicating that an agent's authority to accept service of process is terminated on the revocation of the corporation's certificate of authority to transact business.   Therefore, Xcel argues, the secretary of state could properly mail service of process to TriVis' registered Minnesota address.   But § 303.17 does not address, one way or the other, whether revoking a corporation's certificate of authority affects its capacity to be served in Minnesota.   Because § 303.17 does not address how a foreign corporation should be served, it cannot conflict with a plain reading of § 5.25, which specifically addresses the issue.[2]   <u>See</u> <u>Walker v. Hartford Life & Accident Ins. Co.</u>, 831 F.3d 968, 973 (8th Cir. 2016) (internal quotation and citation omitted) ("When the language of a statute is plain and unambiguous, it is assumed to manifest legislative intent and must be given effect.").

Xcel further contends that, even if TriVis was not properly served, its "numerous and alternative attempts" to notify TriVis of the lawsuit satisfied any due process concerns.   Def.'s Opp'n Mem.

---

[2]   Morever, the court is not persuaded that a plain reading of § 5.25 ignores the remedial purpose of the statute.   Although, Xcel argues that the statute's remedial purpose is "evident on its face," this is far from the case.   Def.'s Opp'n Mem. at 25.   There is no evidence to suggest that the Minnesota legislature enacted the statute so that Minnesota citizens could more easily serve process on foreign corporations.

at 27. But this cannot excuse the failure to properly serve TriVis. Indeed, even if Xcel's attempts provided TriVis with actual notice of the suit, this would not cure any deficiencies in the service of process. See Sieg v. Karnes, 693 F.2d 803, 807 (8th Cir. 1982) ("[A] federal court is without jurisdiction to render personal judgment against a defendant if service of process is not made in accordance with applicable federal or state statutory requirements. This principle remains true despite any actual notice a defendant may have of the lawsuit."); see also Hubbard v. Citi Mortg., Inc., No. 13-2189, 2014 WL 1309112, at *5 (D. Minn. Mar. 31, 2014) ("[A]ctual notice or receipt of service does not amount to effective service of process that otherwise fails to comply with the Minnesota Rules of Civil Procedure."). As a result, the state court lacked personal jurisdiction over TriVis, and the default judgment is void.[3]

Finally, Xcel contends that TriVis did not move to vacate the default judgment within a reasonable period of time. See Fed. R. Civ. P. 60(c)(1). Although TriVis could have brought the motion sooner, the court finds that the delay is not so great as to justify denying relief, especially given the large judgment amount.

---

[3] Because the court finds that the default judgment is void, it will not address TriVis' alternative arguments that the judgment should be vacated under Fed. R. Civ. P. 60(b)(1) or 60(b)(6).

7

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.  Defendant's motion to vacate default judgment [ECF No. 15] is granted; and

2.  The order for default judgment [ECF No. 1-3] is vacated.


Dated: December 21, 2016

                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court